IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ATWOOD OCEANICS, INC., *Plaintiff* | |
| v. | CIVIL ACTION NO. H-04-4028 |
| ZUST BACHMEIER OF SWITZERLAND, INC., *Defendant/ Third-Party Plaintiff,* | |
| v. | |
| CARGO SHIPPING CONSULTANTS, *Third-Party Defendant* | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Zust Bachmeier of Switzerland Inc.'s motion for partial summary judgment on Atwood Oceanics Inc.'s negligence claim and for summary judgment on limitation of liability (Instrument No. 31) and Third-Party Defendant Cargo Shipping Consultants's motion for summary judgment (Instrument No. 25). After reviewing the facts and law, the Court **ORDERS** that Zust Bachmeier of Switzerland Inc.'s motion is **GRANTED** and Cargo Shipping Consultants's motion is **GRANTED**-in-part and **DENIED**-in-part.

**I. RELEVANT FACTS**

This case concerns the packing and shipping of an Atwood Beacon Drillers Control Module (the "DCM" or "Driller's Cabin") from the Port of Houston, Texas, to the Republic of Singapore. The parties to the suit are (1) Atwood Oceanics, Inc. ("Atwood"), the shipper of the DCM, (2) Zust Bachmeier of Switzerland, Inc. ("Zust"), the packer and freight forwarder of the DCM, and (3) Cargo Shipping Consultants ("Cargo Shipping"), which, on behalf of Zust, attended and supervised the lifting and loading of the DCM at the Port of Houston.

The course of dealing between Atwood and Zust began in February 2002 when, as part of its search for a packer / freight forwarder, Atwood contacted Zust. Zust submitted two proposals listing its rates and estimating, based on the information provided by Atwood, the price

for five shipments of equipment. (Instrument No. 43, Ex. 1 & 3). Atwood confirmed Zust's proposal by purchase order (Instrument No. 43, Ex. 4) dated 15 March 2002.

Between March and September 2002, Zust issued Atwood eighteen invoices (Instrument No. 31, Ex. 9) for items packed and shipped. Each invoice included a copy of Zust's Terms and Conditions, which contains a clause limiting Zust's liability to "an amount equal to the lesser of fifty dollars ($50.00) per entry or shipment or the fee(s) charged for services." Rivera Aff. (Instrument No. 31, Ex. 3). Atwood accepted and paid each invoice without disputing the Terms and Conditions generally, or the limitation of liability specifically.

On 19 September 2002, in association with the shipment of the DCM, David Petrusek, Atwood's purchasing manager, signed a document entitled "Customs Power of Attorney, Designation as Export Forwarding Agent and Acknowledgment of Terms and Conditions" (Instrument No. 31, Ex. 1). The final paragraph of this document contains the following language: "Grantor acknowledges receipt of Zust Bachmeier of Switzerland, Inc.'s terms and Conditions of Service governing all transactions between the parties. . ."

On 16 October 2002, Zust hired Cargo Shipping to supervise the lifting and loading of the DCM; its transportation to the Port of Houston; and its lifting, loading and storing in the hold of the ship. At his deposition, Andrew Holdrup, who supervised the operation for Cargo Shipping, acknowledged that part of his job was making sure that the DCM was not damaged during the process, and if it was, informing Zust. Holdrup Dep. 62:14-22. During the DCM's transfer to and storage at the Port of Houston it rained heavily. Nevertheless, according to Holdrup, the DCM was safely loaded and stowed in the hold of the ship.

The vessel bearing the DCM left Houston on 28 October 2002 and arrived in Singapore on 15 December 2002. Upon inspection, the boards covering the DCM's HVAC openings were reportedly broken, and fresh water was allegedly discovered in the cabin. *See* Captain Zulkifli's report (Instrument No. 32, Ex. 5). Plaintiff alleges this water caused three hundred thousand dollars ($300,000) in damage.

On 19 October 2004, Atwood sued Zust on contract and tort theories to recover for the damage to the DCM. Zust then filed a third party complaint against Cargo Shipping to recover any sums for which it may become liable to Atwood.

## II. LAW

### A. Summary Judgment

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. *International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.*, 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. *Anderson*, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party. *Id.* at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. *Id.* at 252.

All reasonable inferences must be drawn in favor of the non-moving party. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574. 587-88 (1986), citing *United States v. Diebold*, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Id.* at 586.  Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor.  *Anderson*, 477 U.S. at 249.  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.*, 477 U.S. at 249-50.  Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial."  *Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A.*, 139 F.3d 532, 536 (5th Cir. 1998).  Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence.  *Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139-40 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871 (1994); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* 506 U.S. 825 (1992).  Nor are pleadings summary judgment evidence.  *Wallace v. Texas Tech University*, 80 F.3d 1042, 1046 (5th Cir. 1996), *citing Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions.  *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 889 (1990).  Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment.  *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998), *citing Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992).

### III. APPLICATION OF LAW TO THE FACTS

**A.  Zust's Motion for Summary Judgment on Atwood's Negligence Claim.**

Zust argues that Atwood's negligence claim should be dismissed as a matter of law because Zust did not owe Atwood a duty in tort.  "To determine whether conduct that breaches a contract can also be a tort, Texas law requires a court to look to the origin of the duty owed and the nature of the resulting injury."  *National Union Fire Ins. Co. of Pittsburgh, PA, v. Care Flight Air Ambulance Service Inc.*, 18 F.3d 323, 326 (5th Cir. 1994); *Formosa Plastics Corp. USA v.*

*Presidio Engineers and Contractors*, 960 S.W. 2d 41, 45 (Tex. 1998).  Generally, if the duty owed arises solely from the contract and the alleged damages are economic, no claim in tort exists.  *See Southwestern Bell Telephone Co. v. Delanney*, 809 S.W.2d 493, 494-495 (Tex. 1991).   Here, Zust's duty was created by the agreement and Atwood's damages are purely economic. Thus, according to Texas law, Atwood's claim sounds only in contract.

In its response, Atwood does not contest the general legal standard for determining whether a claim can properly sound in both contract and tort.  Rather, it argues that an exception applies because  Zust was acting as freight forwarder.  Plaintiff.'s Resp. at 2 (*citing Chicago, Milwaukee, St. Paul & Pac. R.R. v. Acme Fast Freight, Inc.*, 336 U.S. 465, 484-85 (1949); *Zima Corp. v. M/V ROMAN PAZINSKI*, 493 F.Supp. 268, 274 (S.D.N.Y. 1980)).  Had  Atwood sued Zust for negligently performing its duties as freight forwarder, this argument would be correct, but the gravamen of Atwood's complaint is that Zust failed to package properly the DCM.  Neither Atwood's briefing nor the court's research has uncovered precedent recognizing an exception to the general rule for packing services.

**B.  Zust's Motion for Summary Judgment on Limitation of Liability.**

Zust has moved for summary judgment declaring the limitation of liability included in its Terms and Conditions an enforceable part of its contract with Atwood.   It has submitted evidence establishing the events described above, and argues that based on these facts either (1) the "Customs Power of Attorney, Designation as Export Forwarding Agent and Acknowledgment of Terms and Conditions" is the governing contract, or (2) the limitation of liability became part of the contract through the course of dealings between the parties.  Atwood makes three arguments in its response: (1) that the limitation was not part of the contract negotiations; (2) that the limitation is not applicable to packing services; and (3) that the limitation is unconscionable.

After reviewing the facts and law, the court finds that summary judgment for Zust could be granted on either theory it advances.  The "Customs Power of Attorney, Designation as Export Forwarding Agent and Acknowledgment of Terms and Conditions" expressly refers to the Terms and Conditions, and states that these will apply to all transactions between the parties.

Under Texas law, a party is bound by the terms of the contract it signs. *See In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) ("when parties enter into an agreement based on a writing that is not ambiguous, the court will give effect to the parties' intention as expressed in the writing."); *In re Media Arts Group, Inc.*, 116 S.W.3d 900, 908 (Tex. App. –Houston [14th Dist.] 2003) ("under Texas law, a person is obligated to protect himself by reading what he signs and, absent fraud, may not excuse himself from the consequences of failing to meet that obligation.").

Alternatively, through their prior course of dealings, Zust and Atwood incorporated the Terms and Conditions into the contract for the shipment of the DCM. Between 1 March 2002 and 28 October 2002, when the DCM was shipped, Atwood received twenty-six copies of the Terms and Conditions. Atwood never disputed the Terms and Conditions or failed to pay the invoices. In *Pacific Tall Ships Co. v. Kuehne & Nagel Inc.*, 94 F.Supp 2d. 928 (N.D. Ill. 2000) the district court considered a strikingly similar situation. Plaintiff sued defendant for damage to a shipment of model boats, and defendant defended by asserting its limitation of liability. Granting judgment in favor of defendant on the limitation of liability issue, the district court noted that prior to the shipment plaintiff had been provided with over thirty invoices containing defendant's limitation of liability. It concluded, based on the parties' course of dealings, that the limitation was an enforceable part of the transaction. *Id.* at 934.   A similar situation arises here.

Atwood's arguments against enforcing the limitation of liability are unconvincing. Atwood's first argument, that Zust has not shown the limitation of liability was part of the Parties' negotiations, is belied by the Parties' course of dealings and Petrusek's signature acknowledging receipt of the Terms and Conditions on Zust's behalf. Atwood's second argument, that the limitation is inapplicable to packing services, ignores the plain language of the document, which provides that "Grantor acknowledges receipt of . . . [the] Terms and Conditions of Service governing *all transactions* between [sic] Parties." Instrument 31, Ex. 1 (emphasis added). Atwood's last argument, that the limitation is unconscionable, is not supported by evidence of procedural or substantive unconscionability. Both parties to this agreement were sophisticated business enterprises and neither possessed disparate bargaining power. *See Generally*, *Coastal*

*Terminal Operators v. Essex Crane Rental Corp.*, No. 14-02-00627, 2004 WL 1795355, *7 (Tex.App.– Hous. [14th Dist] Aug. 12, 2004) (collecting cases).

**B. Cargo Shipping's Motion for Summary Judgment.**

Cargo Shipping argues that Zust cannot raise a genuine issue of material fact as to either its negligence or contract claims. For the reasons stated *supra*, the court agrees that Zust's negligence claim must be dismissed as a matter of law. Zust's contract claim, however, survives. Based on the reported damage to the packaging of the DCM and the alleged presence of fresh water in the cabin, the fact finder could conclude that Cargo Shipping breached its contract with Zust by failing to notify it of damage done to the DCM while it was being loaded. Summary judgement on Zust's contract claim would therefore be improper.

**IV. CONCLUSION**

For the foregoing reasons, the court **ORDERS** as follows: (1) Zust's motion for summary judgment on Atwood's negligence claim is **GRANTED**; (2) Zust's motion for summary judgment on limitation of liability is **GRANTED**; (3) Cargo Shipping's motion for summary judgement on Zust's negligence claim is **GRANTED**; and (4) Cargo Shipping's motion for summary judgement on Zust's contract claim is **DENIED**.

**SIGNED** at Houston, Texas, this 21st day of March, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE